# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ARLON SHANK, | ) |
| Plaintiff, | ) |
| | ) Case No. 17-CV-446-JED-FHM |
| v. | ) |
| WHITING-TURNER CONTRACTING COMPANY, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court is the Motion for Summary Judgment (Doc. 25) filed by the defendant, Whiting-Turner Contracting Company ("Whiting-Turner"). Defendant argues that because Plaintiff was aware of the hazard that allegedly caused his injury, he has no basis for a premises liability claim. Plaintiff, in turn, argues that Defendant's duty to keep the premises in a reasonably safe condition is not obviated by Plaintiff's knowledge about the existence of the hazard.

**I.   Background**

The following facts are supported by evidence in the record and are construed in favor of Plaintiff, the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

At the relevant time, Plaintiff was working as an employee of P1, a subcontractor of defendant Whiting-Turner, on a project in Mayes County, Oklahoma. On May 5, 2015, while Plaintiff was walking to retrieve a bushing from where the supplies were located, he tripped on Masonite panels that had been laid on the ground. (Doc. 38 at 20-21 [Shank Dep., pp. 37, 41]). He fell and injured his right shoulder. (*Id*. at 22 [Shank Dep., p. 46]).

The Masonite panels had been placed on the ground in order to protect the newly finished floor underneath. (*Id*. at 20 [Shank Dep., p. 38]). The panels were initially taped together at the

seams; however, by February 2015, the tape had mostly torn, and the panels were separating from each other. (*Id*. [Shank Dep., p. 39]). The corners of the panels had also begun to curl up. Plaintiff asserts that, by the time of his fall, the panels were "scattered" and "strewn about." (*Id*. [Shank Dep., p. 38]).

Plaintiff admits that he first noticed the Masonite panels as being a potential hazard in January 2015. (Doc. 25-2 at 9 [Shank Dep., p. 61]). In early March 2015, he put a checkmark by "Slip/trip potential identified" on a Pre-Task Planning Card.[1] (Doc. 25-5). He also wrote in "slips, trips, [and] falls" as hazards associated with his work. (*Id*.). Similarly, he checked "Slip/trip potential identified" and wrote "slips/trips" on a Pre-Task Planning Card on April 29, 2015. (Doc. 25-4). Plaintiff also pointed out the issue to a safety supervisor on April 21 and 28, 2015. (Doc. 38 at 27 [Shank Dep., p. 68]). He saw several different people stumble on the Masonite panels, and he himself stumbled on the panels once before the accident at issue. (Doc. 25-2 at 9-10 [Shank Dep., pp. 61-62]).

## II. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The courts thus must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

---

[1] P1 required its employees to fill out Pre-Task Planning Cards to review what work was to be performed and identify any particular hazards associated with that work.

*Id.* at 251-52. The non-movant's evidence is taken as true, and all justifiable and reasonable inferences are to be drawn in the non-movant's favor. *Id.* at 255.

**III. Analysis**

To establish a claim of negligence under Oklahoma law, a plaintiff must show: "(1) existence of a duty on the part of the defendant to protect plaintiff from injury; (2) defendant's breach of the duty; and (3) injury to plaintiff proximately resulting therefrom." *Scott v. Archon Grp., L.P.*, 191 P.3d 1207, 1211 (Okla. 2008).[2] "The threshold requirement in any case based on negligence is to establish the existence of a duty, for there can be no negligence in the absence of a defendant's duty to plaintiff." *Id*. To make this determination, courts must first analyze the plaintiff's status as a trespasser, licensee, or invitee. *Id.*; *see also Wood v. Mercedes-Benz of Okla. City*, 336 P.3d 457, 459 (Okla. 2014). Here, it is undisputed that plaintiff enjoyed the status of an invitee while he was working on the Whiting-Turner project. (*See* Doc. 25 at 5; Doc. 38 at 5).

"[A] property owner, as an invitor, owes the highest duty of care to an invitee." *Wood*, 336 P.3d at 459. With respect to an invitee, a property owner must "exercise reasonable care to keep the premises in a reasonably safe condition and to warn of conditions which [are] in the nature of hidden dangers, traps, snares, or pitfalls." *Id.* (quoting *Martin v. Aramark Servs., Inc.*, 92 P.3d 96, 97 (Okla. 2004)) (alterations in original); *see also Sholer v. ERC Mgmt. Group, LLC*, 256 P.3d 38, 43 (Okla. 2011). Traditionally, Oklahoma courts have held that invitors "need not guard the invitee against dangers so apparent and readily observable that the conditions should be discovered." *Sholer*, 256 P.3d at 43. In other words, under long-standing Oklahoma law, a property owner had no duty to render safe an "open and obvious" danger. *Martinez v. Angel Expl.*, 798 F.3d 968, 975

---

[2] In this diversity suit, the Court is to "ascertain and apply [Oklahoma] law [and reach] the result that would be reached by [an Oklahoma] court." *See Martinez v. Angel Expl., LLC*, 798 F.3d 968, 973 (10th Cir. 2015) (applying Oklahoma law in diversity premises liability action).

3

(10th Cir. 2015). "[A] determination that 'under similar or like circumstances an ordinary prudent person would have been able to see the defect in time to avoid being injured' was dispositive of a landowner's duty." *Id*. (quoting *Scott*, 191 P.3d at 1212).

However, the Oklahoma Supreme Court recently held in *Wood v. Mercedes-Benz of Oklahoma City* that the open and obvious danger doctrine was "not absolute." *Wood*, 336 P.3d at 459. Instead, "even where an invitee is injured by an open and obvious condition, a landowner may still have a duty to warn of or otherwise protect the invitee from the dangerous condition if the injury suffered was reasonably foreseeable to the landowner." *Martinez*, 798 F.3d at 975.

In *Wood*, the plaintiff was a catering employee who was sent to a car dealership to assist with an event there. *Wood*, 336 P.3d at 458. Upon her arrival, she noticed that there was ice on the grass, pavement, and sidewalks surrounding the dealership. Apparently, a sprinkler system had activated overnight and left ice on surfaces throughout the property. Although the plaintiff testified that she saw the ice and tried to be careful walking in and out of the dealership, she still slipped and sustained injuries. After the fall occurred, a dealership employee acknowledged that he should have put salt down when he got to work.

The Oklahoma Supreme Court held that "under the peculiar facts of this case," the dealership "owed a duty to take remedial measures to protect [the plaintiff] from the icy conditions surrounding the entry to its facility." *Id*. at 460. The Court noted that the accumulation of ice was caused not by natural precipitation, but by the dealership's sprinkler system. *Id*. The Court also noted that the dealership had notice of the icy conditions and knew that the catering company was sending its employees to the facility. *Id*. "As such," concluded the Court, "it was foreseeable that [the catering company's] employees would encounter the icy hazards created by the sprinkler

4

system and would likely proceed through the dangerous condition in furtherance of their employment." *Id*.

District courts asked to apply the *Wood* exception have generally considered it applicable where the owner could foresee the plaintiff's injury because there was evidence that plaintiff had no choice but to traverse an obvious and open danger. *See, e.g., Fuqua v. Deer Run Apartments*, Case No. 16-CV-318-CVE-TLW, 2017 WL 1193061 (N.D. Okla. Mar. 29, 2017) ("Here, *Wood* applies because it was foreseeable that plaintiff would go down the dark staircase despite its obvious danger because it was the only way to exit her apartment building after dark."); *Hoagland v. Okla. Gas & Elec. Co.*, Case No. CIV-15-0751-HE, 2016 WL 3523755 (W.D. Okla. June 22, 2016) (applying *Wood* where plaintiff was contracted to pick up a load for delivery and fell while tarping the load, as required by the employer).

In reviewing the *Wood* case, the Tenth Circuit acknowledged that the reach of this new exception to the open and obvious doctrine "is yet to be determined." *Martinez*, 798 F.3d at 978 (remanding for the district court to determine whether *Wood* applied where an employee was injured by a pump jack that he knew lacked safety guards). However, the circuit court surmised that the exception "clearly applies in situations like *Wood* where a business invitee is 'present to fulfill [his or] her employer's contractual duty to provide service,' the invitee's 'presence and exposure to the hazardous . . . condition was compelled to further a purpose of the [defendant],' and the invitee was 'required' to encounter 'the hazardous condition in furtherance of [his or] her employment.'" *Id.* at 978 (alterations in original) (quoting *Wood*, 336 P.3d at 459 n.6, 460).

Defendant's first argument for why *Wood* is inapplicable to the present case is that Plaintiff was not required to walk in the areas where he had seen the Masonite panels lifted off the floor. Defendant asserts that Plaintiff had "full ability to navigate around any hazard." (Doc. 49 at 2-3).

5

Defendant reasons that because Plaintiff made a note of the "slip/trip potential" on his April Pre-Task Planning Card, he must have known exactly where the hazard was located. Yet, there is evidence to support the idea that the trip hazard was not limited to a few, identifiable (and, thus, avoidable) places. First of all, there is evidence that other workers had stumbled on the panels before Plaintiff's fall on May 5, 2015, which would tend to show that the hazard was not easily avoidable. (Doc. 38 at 26 [Shank Dep., pp. 61-62]). Moreover, Plaintiff testified that the Masonite panels had separated from each other throughout the area, they were "no longer laid in square and flat," their corners were "sticking up," and people working in the area on the day of the accident had further moved the panels around. (*Id*. at 20, 27 [Shank Dep., pp. 39, 67-68]). This further suggests that the trip hazard may have been widespread and difficult to avoid. Ultimately, it will be up to the jury to determine whether Defendant should have anticipated Plaintiff's injury in spite of the open and obvious condition of the Masonite panels. *See Martinez*, 798 F.3d at 981.

Defendant also argues that the panels could not be foreseen as likely to cause serious injury—in contrast to the ice in *Wood* or the pump jack in *Martinez*. (Doc. 49 at 3). The Court declines to make such a factual determination; instead, the jury will decide whether the Plaintiff's injury was foreseeable here.

Finally, Defendant asserts that the instant case is distinguishable from the cases cited by Plaintiff because Defendant took measures to remedy the hazard. This argument goes to whether Defendant exercised reasonable care to protect Plaintiff from the alleged dangerous condition—a fact question for the jury.

Because the Court finds that material questions of fact remain in dispute, Defendant's Motion for Summary Judgment (Doc. 25) is **denied**.

SO ORDERED this 6th day of December, 2018.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE