# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ARLON SHANK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 17-CV-446-JED-FHM |
| v. | ) |
| | ) |
| WHITING-TURNER CONTRACTING COMPANY, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court is the Motion for Partial Summary Judgment on Punitive Damages (Doc. 26) filed by the defendant, Whiting-Turner Contracting Company ("Whiting-Turner"). Plaintiff has submitted a Response (Doc. 47), and Whiting-Turning has filed a Reply (Doc. 51). Because the undisputed facts in this case were outlined in the Court's recent Opinion (Doc. 61) denying Whiting-Turner's global summary judgment, the Court will not repeat them here.

**I.      Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Courts thus must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The non-movant's evidence is taken as true, and all justifiable and reasonable inferences are to be drawn in the non-movant's favor. *Id.* at 255.

**III.    Analysis**

Punitive damage awards in Oklahoma are governed by *Okla. Stat.* tit. 23, § 9.1 ("Section 9.1"). Section 9.1 states:

> A.    In an action for the breach of an obligation not arising from contract, the jury, in addition to actual damages, may, subject to the provisions and limitations in subsections B, C and D of this section, award punitive damages for the sake of example and by way of punishing the defendant based upon the following factors:
>
> > 1. The seriousness of the hazard to the public arising from the defendant's misconduct;
> >
> > 2. The profitability of the misconduct to the defendant;
> >
> > 3. The duration of the misconduct and any concealment of it;
> >
> > 4. The degree of the defendant's awareness of the hazard and of its excessiveness;
> >
> > 5. The attitude and conduct of the defendant upon discovery of the misconduct or hazard;
> >
> > 6. In the case of a defendant which is a corporation or other entity, the number and level of employees involved in causing or concealing the misconduct; and
> >
> > 7. The financial condition of the defendant.

A "Category I" award may be given when the jury finds by clear and convincing evidence that the defendant has been guilty of reckless disregard for the rights of others. *Id*. § 9.1(B). A "Category I" award may not exceed the greater of $100,000 or the amount of actual damages awarded. *Id*. A "Category II" award may be given when the jury finds by clear and convincing evidence that the defendant acted intentionally and with malice towards others. *Id*. § 9.1(C). A "Category II" award may not exceed the greatest of $500,000, twice the amount of actual damages, or the increased financial benefit derived by the defendant as a direct result of the conduct causing the injury. *Id.* Finally, a "Category III" award may be given where the jury finds by clear and convincing evidence that the defendant acted intentionally and with malice towards others and the

"court finds that there is evidence beyond a reasonable doubt that the defendant acted intentionally and with malice and engaged in conduct life-threatening to humans." *Id*. § 9.1(D). A Category III award may be in any amount the jury deems appropriate. *Id.* In its motion, Whiting-Turner argues that the facts cannot support any category of punitive damages.

To support this contention, Whiting-Turner asserts that Plaintiff "has never established that Whiting-Turner placed the Masonite panels down or otherwise controlled this condition." (Doc. 26 at 9). According to Whiting-Turner, Plaintiff has not shown that Whiting-Turner was responsible for correcting the alleged hazard. Instead, Whiting-Turner argues, another subcontractor was responsible for the panels.

Under Oklahoma law, "a premises liability may not be transferred to an independent contractor when the injury-causing condition of the premises is within the control of the invitor." *Thomas v. E-Z Mart Stores, Inc.*, 102 P.3d 133, 135 (Okla. 2004); *see also Martinez v. Angel Expl.*, 798 F.3d 968, 980 (10th Cir. 2015) (applying Oklahoma law and explaining that a landowner's duty to keep the premises in a reasonably safe condition is non-delegable). Notably, the Whiting-Turner Safety Director for this project, Mike Dickerson, testified that he assisted in the effort to re-secure the Masonite panels after Plaintiff's fall. Mr. Dickerson testified that he "identified a different tape solution, a wider, stickier, really expensive tape that [he] felt might hold up and reduce the maintenance issues." (Doc. 47 at 41 [Dickerson Dep., p. 78]).[1] Drawing all reasonable inferences in favor of the Plaintiff, the Court finds that sufficient evidence exists to create a genuine dispute on the issue of Whiting-Turner's control over the alleged hazardous condition.

Whiting-Turner also argues that Plaintiff did not report the issue with the panels to anyone with authority to address it. (Doc. 26 at 10). This is also disputed. Mr. Mark Hamilton, a safety

---

[1] The Court has denied Whiting-Turner's motion in limine to exclude any reference to subsequent remedial measures taken after Plaintiff's fall. (*See* Doc. 63).

3

consultant hired by Whiting-Turner, testified that Plaintiff talked to him on several occasions about the issue with the Masonite panels. (*See* Doc. 47 at 48 [Hamilton Dep., p. 20]). Mr. Hamilton asserted that he was "constantly in there having [the maintenance contractor] take [the Masonite flooring] up, putting new one down, and then retape it down." (*Id*. at 46 [Hamilton Dep., pp. 11-12]); (*see also id*. at 52 [Hamilton Dep., p. 36]) ("I can't stress how many times the Masonite was brought up. Okay? And, again, it was dealt with."). A jury could infer from both Mr. Hamilton's job title and his statements about the Masonite that Plaintiff did, in fact, report the issue to someone with authority to resolve it.

Whiting-Turner further argues that punitive damages would be inappropriate because there is no evidence that Whiting-Turner failed to immediately address concerns brought by the Plaintiff about the Masonite panels. This characterization of the evidence simply is not true. In his deposition, Plaintiff testified that "[n]obody was retaping [the panels]" and "[n]obody was doing anything about it." (Doc. 47 at 14 [Shank Dep. p. 66]). Plaintiff also testified that several other people stumbled on the panels before his fall on May 5th, which supports an inference that the panel issue was not always immediately addressed. (*See id*. at 13 [Shank Dep, p. 61-62]).

Lastly, Whiting-Turner asserts that punitive damages are not appropriate when the alleged hazard appeared to be a minor issue and not a "serious threat." (Doc. 26 at 9; Doc. 51 at 1). Whiting-Turner, in support of this argument, adds that there is no evidence that Plaintiff was disabled by the accident. (Doc. 51 at 1). Resolving all factual disputes and drawing all reasonable inferences in favor of the non-moving party, the Court finds that there are genuine issues of material fact as to both the seriousness of the hazard and Whiting-Turner's actions concerning the hazard. Subsequently, the Court finds that summary judgment is inappropriate on this issue, and Defendant's Motion for Partial Summary Judgment on Punitive Damages (Doc. 26) is **denied**.

SO ORDERED this 17th day of December, 2018.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE